**FILED**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

FEB 0 4 2010

DAVID CREWS, CLERK
BY _____
Deputy

DANIEL M. SUNDBECK AND
LUCY SUNDBECK                                        **PLAINTIFFS**

VS.                                   CAUSE NO. _1:10 CV 23-D-7_

MILTON O. SUNDBECK, JR.                              **DEFENDANT**

### JURY TRIAL DEMANDED

### COMPLAINT

COME NOW the plaintiffs, Daniel M. Sundbeck ("Dan Sundbeck" and/or "Plaintiff") and

Lucy Sundbeck ("Lucy Sundbeck" and/or "Plaintiff") and file their Complaint against Milton O.

Sundbeck, Jr. ("Milton Sundbeck" and/or "Defendant"). In support of their Complaint, Dan

Sundbeck and Lucy Sundbeck would respectfully show the following:

### SUMMARY OF CLAIMS

1.

This action arises from Milton Sundbeck's intentional abuse of his power as majority

shareholder in Southern Ionics, Inc. ("Southern Ionics" or "the Company") to effectively render

the stock in a closely held family corporation worthless to all minority shareholders (all other

family members) following his divorce from Cheryl Sundbeck in 2000. Since the divorce Milton

Sundbeck has, *inter alia*, demanded complete allegiance of family members (also shareholders

and/or employees) to him personally on pain of firing; summarily fired family members who had

committed their lives to helping build the value of the Company; disregarded corporate formalities

except when forced to feign compliance in form only by pending litigation; reconstituted the

Company's Board of Directors any time he pleased to assure his domination and control of all

decisions; utilized the Company's funds and assets for personal, non-business related purposes; engaged in self dealing; and wrongfully appropriated Southern Ionics' money and assets for his own personal use while denying other shareholders any benefits from their ownership of stock. This action seeks such legal and equitable remedies as the Court may impose under the facts to protect, or to liquidate, the minority shareholder interests held by Daniel and Lucy Sundbeck — the sole remaining minority shareholders in a closely held family business which was previously owned by Milton Sundbeck, his wife of thirty-seven years, Cheryl Sundbeck, and their two children and their spouses.

## PARTIES, JURISDICTION AND VENUE

2.

Dan Sundbeck and Lucy Sundbeck are adult resident citizens of Baldwin County, Alabama. They are the natural son and daughter-in-law of Milton and Cheryl Sundbeck and collectively own approximately 5% of all issued and outstanding common stock of Southern Ionics.

3.

Milton Sundbeck is an adult resident citizen of Clay County, Mississippi, and owns or controls all common stock in Southern Ionics not owned by Plaintiffs. Milton Sundbeck may be served with process at 201 Commerce Street, West Point, Mississippi 39773.

4.

This Court has legal and equitable jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

-2-

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because the Defendant resides within this judicial district, and a substantial part of the events or omissions giving rise to the claims of Dan Sundbeck and Lucy Sundbeck occurred or accrued within this judicial district.

## FACTS COMMON TO ALL COUNTS

6.

Milton Sundbeck and Cheryl Lobb were married in 1963 and had two children, Daniel (Dan) and Kristen Sundbeck. In the early 1980s Defendant and his wife formed a closely held corporation engaged in the sale of cement processing additives. The Company gradually grew and expanded its product lines. Around 1990, the Company established its corporate headquarters in West Point, Mississippi. At all relevant times the Company has been a Mississippi corporation in which Defendant has always been the majority shareholder.

7.

As Southern Ionics began to expand, in the late 1980s Defendant recruited his daughter Kristen's husband and his son-in-law, Joe Stevens, to help Southern Ionics build its product line, improve quality control and acquire or construct additional manufacturing facilities. By 1990 the Company was operating several manufacturing plants.

8.

Dan Sundbeck graduated from university in 1987 and immediately began working as a salesman for another company marketing industrial products in Georgia and Florida. During this time he and his wife Lucy established their home in Atlanta, Georgia. Around Christmas 1990, Defendant met with his son, Dan Sundbeck, and told him that he wanted to build Southern Ionics

-3-

as a family business. Joe and Kristen Stevens were already involved in the company and the addition of Dan and Lucy would bring everyone together in a family company. Defendant offered Dan a job in sales at Southern Ionics promising (1) a sales job with a higher yearly salary and an opportunity to become part of management; (2) the opportunity to be an owner of stock in a family business and participate in its profits and growth in equity value if they succeeded in building the Company; and (3) the opportunity to raise his children with the extended family in West Point, Mississippi.

9.

In reliance on Defendant's promises and their family considerations, Dan and Lucy Sundbeck made the decision that they would give up their existing jobs so they could move to West Point, Mississippi, and build their future in the family business. Throughout the decision making process, Milton Sundbeck told Dan and Lucy that their decision was the beginning of an exciting time for them all, and that their lives would be different because they would be owners, not just employees, of a Company with a great and profitable future. Dan Sundbeck joined Southern Ionics and assumed responsibility for a sales territory in January, 1991.

10.

After two full years of employment, on December 31, 1992, Dan Sundbeck was allowed to purchase 8 shares of Southern Ionics common stock. Over the next five years Dan Sundbeck's responsibilities increased and he worked continuously to build the Company sales network and an excellent sales force, providing a critical component of Southern Ionics growing sales and profits as its manufacturing capacity and product lines grew. During this period company profits were primarily reinvested in Southern Ionics with Dan Sundbeck's and Joe Steven's efforts rewarded

-4-

in the annual transfer of stock in the family business. In 1997 Dan was made Sales Manager for the entire Company which was continuing to build equity to support additional manufacturing facilities and product sales.

11.

During the same time period after Dan Sundbeck joined the Company in 1991, and consistent with the vision of a family business, all Company stock held by anyone outside the family was reacquired and was being conveyed to the family members in lieu of annual compensation. By the end of the calendar year 1997 Dan Sundbeck became Sales Manager and had received 35 additional shares of this Company stock. Reinforcing Southern Ionics character as a family business being built by and for the family, Lucy Sundbeck also received 4 shares of Company stock during this time.

12.

Between 1997 and 2000 Southern Ionics business continued to grow as a result of the efforts of Milton Sundbeck, Joe Stevens and Dan Sundbeck, and the reinvestment of profits in the family business; however, in 1998 Milton Sundbeck left his wife Cheryl and moved to Houston, Texas, where he primarily resided for several years with another woman. During this period he left his son and son-in-law to oversee the operations of Company in its home office in West Point, Mississippi. Despite the additional responsibility and the reinvestment of Company profits Dan and Lucy Sundbeck received no additional stock in 1998 or 1999.

13.

In January 2000 the marriage of Milton and Cheryl Sundbeck was dissolved by divorce. Following the divorce, Milton Sundbeck's attitude toward his family and his vision of Southern

Ionics as a family business began to change, and he began to increase the amounts he was taking out of the business for his own use without shareholder or director approval, to use Company assets and property — such as the corporate plane — for his personal use, and to generally treat all assets of Southern Ionics as his own personal property. Still, following the divorce Defendant continued to promote the Company to his son, daughter and their spouses as a family business, encouraging them to work to expand the Company's business and grow its profits. In an apparent effort to assure his loyalty to him personally, Defendant also resumed transfers of Company stock to Dan Sundbeck, Kristen Stevens and their spouses with Dan Sundbeck and Joe Stevens each holding important positions with the Company. Between 2000 and 2002 Dan and Lucy Sundbeck each received an additional 5 shares of Company stock, bringing their total ownership to 48 and 9 shares respectively.

14.

While continuing to promote Southern Ionics as a family business, Defendant used his majority shareholder power to appropriate Southern Ionics assets for his personal use as he pleased, and simultaneously restricted the funds paid to Cheryl Sundbeck (who owned more than 25% of the Company) to the minimum amount required by the divorce decree in which she had received additional Southern Ionics common stock in lieu of cash in the property settlement. Despite Cheryl Sundbeck's stated need for some additional funds, Defendant made it absolutely clear that no dividends would be paid on the stock, and that he had no intention of purchasing any of her stock for fair value. As a result of these and other issues the tensions among family members and resulting conflicts steadily escalated and Dan and Lucy Sundbeck moved from West Point to Baldwin County, Alabama, in 2002.

15.

After Dan and Lucy Sundbeck moved away from West Point, Mississippi, the family tension and conflicts there continued to escalate, and in 2003, Milton Sundbeck summarily fired his daughter Kristen, who was an employee and shareholder in the Company, following a dispute of Defendant's treatment of her mother. At the time he told her he would deal with her husband Joe Stevens later. The following week, when Joe Stevens, Vice-President and shareholder, would not comply with Defendant's demands, Milton Sundbeck immediately fired him for an asserted lack of loyalty to Defendant.

16.

Following the discharge of Kristen and Joe Stevens, Defendant asked Dan Sundbeck to travel from his home in Alabama to West Point to discuss the circumstances and future of the Company. During their meeting Defendant wanted an assurance that his son would remain loyal to him in their efforts to build the Company and that Dan's long friendship with the ex-husband of Defendant's then current girl friend would not compromise Dan's loyalty to him and to building the Company. According to Defendant he wanted these assurances because, Joe Stevens was not loyal to him, and was causing disruption to and injuring the welfare and operations of Southern Ionics. At the time Defendant knew that his son had invested his adult working life in the Company and that Plaintiffs' family depended on continued income from Southern Ionics.

17.

Some time after the firing of Kristen and Joe Stevens, Cheryl Sundbeck used her stock ownership and her position as a director of Southern Ionics (guaranteed in the divorce decree) to begin seeking information on the operation and finances of the Company. This investigation

ultimately resulted in the filing of a lawsuit on November 19, 2005, against Milton Sundbeck, personally, based solely on his breach of fiduciary duties as the majority, controlling shareholder of Southern Ionics. Defendant's response to the lawsuit by his ex-wife was to accelerate and heighten his abuse of his majority control.

18.

Even though Cheryl Sundbeck's lawsuit neither sued Milton Sundbeck in his capacity as an officer or director of Southern Ionics, nor named Southern Ionics as a party, on January 6, 2006, Defendant wrote the Board of Southern Ionics requesting an amendment to the bylaws of the company to authorize his indemnification for the defense of Cheryl Sundbeck's case charging him solely for his unlawful conduct in his capacity as majority shareholder. The Board of Directors consisted of Defendant, Cheryl Sundbeck and Defendant's personal accountant, Lee Stafford. Despite the clear conflicts of interests, Defendant and Lee Stafford voted over the objection of Cheryl Sundbeck to make the amendment to Southern Ionics' bylaws. Under this amendment Southern Ionics paid Defendant's past and future legal fees and expenses incurred in litigation with Cheryl Sundbeck. This action by Defendant constituted a clear breach of his fiduciary duties to Plaintiffs.

19.

In further defiance of his fiduciary obligations, in 2006 Defendant caused Southern Ionics to file retaliatory lawsuits against both Cheryl Sundbeck and Joe Stevens. This included a suit against Cheryl Sundbeck seeking recovery of $34,282.38 allegedly overpaid to her during several years. In that same year, Defendant took 6 times the annual compensation he had taken from the Company during the year before the divorce --- several million dollars.

-8-

20.

During the course of the approximately two and one-half (2 ½) year life of the litigation filed by Cheryl Sundbeck against Milton Sundbeck, Milton Sundbeck caused Southern Ionics to pay him millions of dollars out of the assets of Southern Ionics. This cash, which was clearly available for payment of dividends, was wrongfully appropriated from the Company through unauthorized increases in Defendant's annual salaries by Defendant; self-awarded bonuses based primarily on the availability of unencumbered funds over and above that taken by Defendant as increased salary; Company "redemption" of preferred stock allegedly purchased by Defendant many years before, but not ever reflected in a timely issued stock certificate; purchase of an interest in a separate company in Defendant's name with funds from the Company; payment for Defendant's personal use of the company plane and personal travel expenses; and other diverse mechanisms by which he violated his fiduciary duties as majority shareholder.

21.

After the firing of Joe and Kristen Stevens and the filing of the suit by Cheryl Sundbeck, Defendant repeatedly represented that he was going to put a formal stock bonus program into place to reward Dan Sundbeck and other senior executives for their contributions to the Company's profits when all of the legal and tax issues could be worked out and an appropriate mechanism established. Dan Sundbeck was repeatedly told that he and Lucy would be direct beneficiaries of this stock program, which was consistently and repeatedly represented to them after the conclusion of the Cheryl Sundbeck litigation. Throughout the remaining years of his employment at Southern Ionics following the divorce of his mother and father, Dan Sundbeck continued to work to build the sales force for its products, and in April 2006 he was told that he was being made Vice-

President of Sales for the Company in recognition of those efforts.

22.

In August 2007 Dan Sundbeck was advised that he was being made a member of the Board of Directors of the Company, and led to believe that he would be fully participating in the future policy making, planning and operating decisions of the Company. As he began to participate in this process, Dan Sundbeck began to suspect that his appointment to the Board of Directors was only part of Defendant's use of his majority power to restructure the Board of Directors to assure that Defendant would have a majority vote to defeat Cheryl Sundbeck's objections to matters directly benefitting Defendant and on which he should have been recusing himself and making a majority vote impossible. Following Dan Sundbeck's appointment, the Board of Directors consisted of Milton Sundbeck, Cheryl Sundbeck, Dan Sundbeck, Lee Stafford (Defendant's personal accountant) and Steve Mitchener, the Company's Vice-President of Finance. Obviously, Dan Sundbeck's continued employment at Southern Ionics was dependent on his loyalty to Defendant.

23.

As a director Dan Sundbeck was never provided any detailed information supporting the decisions he was told to vote on. Rather, he was given a limited summary of information to support actions and decisions of Defendant made outside any full disclosure and discussion by the Board of Directors as a group. Dan Sundbeck and Steve Mitchener were expected to rubber stamp Defendant's decisions with little explanation, and given Defendant's history of firing his own daughter and son-in-law for lack of loyalty and compliance on personal matters, the consequences of failure to do so were clear.

-10-

24.

In April 2008, at Milton Sundbeck's instance, Southern Ionics purchased all of the issued and outstanding common stock of Southern Ionics held by Cheryl Sundbeck, and by Joe and Kristen Stevens. Plaintiffs are informed and believe that extensive discussions and negotiations were undertaken which resulted in this action by the Company; however, Plaintiffs were never provided with any of the information relating to the discussions and negotiations. Following this transaction the Defendant, and Dan and Lucy Sundbeck, were the only remaining shareholders of Southern Ionics.

25.

After the Company purchase of stock from all family members except Plaintiffs, all actual Board of Directors meetings ended. The realization that his appointment to the Board of Directors was largely, if not entirely, a sham created to support arguments in the litigation with Cheryl Sundbeck, together with the failure of any executive stock program to materialize, caused Dan Sundbeck to question Milton Sundbeck's true intentions and the security of his position in the Company. Despite all of the issues and distractions, during the period between July 1, 2003, and April 2009 the sales force built by Dan Sundbeck at Southern Ionics more than doubled the sale of the Company products, from approximately $72,000,000 to $150,000,000. Company profits also improved.

26.

Based on the merits of his performance, and because of his concerns after a number of failed attempts to discuss the promised stock bonus program with Defendant in 2008, Dan

-11-

Sundbeck pressed the issue with his father in December 2008. In response Defendant told his son that he had formed and was filing the Daniel M. Sundbeck Family Trust, but he would not give Plaintiff a copy of the trust document. Defendant also said that he was going to set up a trust to hold his stock and that its trustees would run the Company if he died. When Plaintiff pressed Defendant, Defendant indicated that Dan Sundbeck would be on the Board of Trustees and participate in running the Company under the trust Defendant was planning. Dan Sundbeck was later told that the trust being created by Defendant provided that the Company would be run by a Board of Trustees made up of John Crowell, Esq., Lee Stafford, CPA, and Defendant's current wife, Christy Sundbeck.

27.

Following these discussions, Dan Sundbeck realized that he had given almost 18 years of his work life to building a Company with his family in which he held a valuable equity interest; but his employment depended entirely on the whim of Defendant who had no intention of treating him as a co-owner or allowing him to have any of the benefits of being an owner, rather than just an employee. It became clear that Defendant recognized no duty of obligation to him and that his, and his family's future, was no more secure than that of his mother, sister and brother-in-law.

28.

On information and belief, beginning in 2008, and without the approval of Southern Ionics' Board of Directors or shareholders, Defendant used his majority control of the Company to take and use funds and resources of Southern Ionics to purchase and renovate the Ritz Theater, an abandoned 1930s movie theater in downtown West Point. On or about March 20, 2009, Defendant formed The Ritz Theater and Conference Center, LLC for which he serves as the Manager of the

limited liability company. Plaintiffs are informed and believe that Defendant used more than $1,000,000 of Southern Ionics' assets to fund the purchase and renovation of the Ritz Theater to create a conference center for wedding receptions, formal events, business meetings, and social gatherings.

29.

In April of 2009, Dan Sundbeck resigned from his employment with Southern Ionics. Initially, following the resignation Defendant made a verbal offer to Dan Sundbeck to pay him one year's compensation and Company employee benefits, title to the Company vehicle he was driving, and purchase of Dan and Lucy Sundbeck's Southern Ionics stock at fair value in exchange for a formal letter of resignation from the Company. Dan Sundbeck verbally accepted this offer and initially received his salary, title to the vehicle and paperwork to continue the benefits; however, Defendant soon retracted his offer to purchase the stock, stating that he had decided it was not in the best interest of Southern Ionics, or Dan and Lucy Sundbeck. Defendant subsequently undertook to renegotiate the oral agreement with proposals which did not anticipate the purchase of Plaintiffs' stock and included, as a condition, that Dan Sundbeck sign consent minutes of the Board of Directors containing a blanket ratification of all past actions of Defendant. Subsequently, all payment of salary and benefits was terminated.

30.

On June 18, 2009, Defendant used his majority stockholder interest to vote Dan Sundbeck off the Board of Directors of Southern Ionics over Dan Sundbeck's objection; thereby removing Dan Sundbeck from the only position in which he could easily obtain Company information. Plaintiffs are informed and believe that consistent with his prior response to any resistance to his

-13-

desire, Defendant has retained an estate attorney to draft estate planning documents which establish control of Southern Ionics after his death in a Board which excludes Dan Sundbeck.

31.

On August 24, 2009, Plaintiff sent Defendant correspondence requesting certain Defendant and Company financial and/or corporate documentation. Defendant subsequently agreed that the Confidentiality Agreement under which Plaintiffs' counsel obtained Southern Ionics and Milton Sundbeck information in the Cheryl Sundbeck litigation was hereby amended to authorize Plaintiffs' use of such information in the representation of Plaintiffs herein. On or about September 22, 2009, and after retrieving the closed Cheryl Sunbeck litigation file and reviewing its contents, Plaintiffs revised their earlier August 24, 2009, request for Southern Ionics information. On October 1, 2009, Defendant acknowledged Plaintiffs' revised information request and responded that additional financial and corporate information would be provided as soon as it was available. No additional financial information has been provided.

32.

During the almost 18 years that Dan Sundbeck was a salaried employee and subsequently officer and director of Southern Ionics, Dan and Lucy Sundbeck never received any return on the stock they acquired in the Company, always looking to the future of the company and an ultimate return on their equity investment. Having learned the full scope of Defendant's unbridled appropriation of Company assets, it is clear that they should have received additional stock or that dividends should have been paid on the stock to compensate for Defendant's wrongful taking and use of those assets beginning in the early 2000's.

-14-

33.

During the years 2006, 2007, 2008 and 2009 Southern Ionics has earned monumental profits from which Milton Sundbeck has drawn freely as he, in his sole discretion, sees fit. No comparable benefit has been given to any minority shareholder during this period, or earlier periods of increased profitability during the early 2000's which all result from the combined efforts of all family shareholders and the reinvestment of profits in the decade of the 1990's. As a practical matter, Defendant's actions over this period have demonstrated his clear belief that he is the only shareholder entitled to receive any benefits from the deferral of compensation by others in the 1990's.

34.

Since 2001, Southern Ionics has leased a corporate jet which Defendant regularly uses for improper personal purposes as he solely sees fit, including but not limited to personal transportation for himself, his wife, her children and their friends to and from various cities located throughout the United States including Eagle/Vail, Colorado; Monterey, California; Knoxville, Tennessee; Fort Walton Beach, Florida; New Orleans, Louisiana; and Albuquerque, New Mexico. Defendant caused Southern Ionics to bear the expense of these flights to the detriment of the ownership interest of Dan and Lucy Sundbeck in Southern Ionics. Plaintiffs were invited on one such trip on the corporate jet.

35.

Defendant has also caused the Company to reimburse him for excessive and improper travel expenses. By way of example only and not by limitation, in March of 2004, Defendant directed Southern Ionics to reimburse him for all trip expenses for himself and his new wife to

-15-

South Africa, allegedly for business purposes.

36.

Furthermore, between 2000 through 2004 Defendant caused Southern Ionics to pay Town Creek Farm, a partnership between Defendant and Joe Stevens, thousands of dollars in excessive storage fees to store equipment owned by Southern Ionics.

37.

At all relevant times Defendant has consistently and intentionally used his power as the majority shareholder of the Company to disregard all corporate formalities, except on some occasions when necessary for pending litigation, has ignored or manipulated the rights of minority shareholders and the authority of the Board of Directors, and has used the Company and its resources to engage in transactions for his personal gain and sought formal approval of the Board of Directors without either making full disclosure to, or seeking and receiving prior approval from, the Board of Directors for such decisions where required. Defendant has, in fact, asserted that his decisions on behalf of the Company do not require the observance of such formalities as he can obtain such approval at will.

## COUNT I

## ACCOUNTING

38.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 37, inclusive in this Paragraph 38.

-16-

39.

Defendant has engaged in oppressive conduct in his capacity as majority shareholder by abusing his majority ownership for private gain at the expense of minority shareholders; by his personal use of corporate assets in total disregard of the rights of the minority shareholders; by unilaterally making investments which are not in the corporation's best interests; by freezing out minority shareholders from reasonable participation in the business of the Company and restricting the availability of relevant information; by awarding himself excessive compensation and bonuses which should have been paid out based on ownership in the form of dividends or as otherwise proper; by misapplying and wasting Company funds; and/or by generally operating the Company for his sole benefit to the detriment of minority shareholders.

40.

Since the fiscal year ending June 2002, Defendant has used the assets of Southern Ionics as his personal bank to pay himself whatever amounts he desired from any available funds, and to use such funds for other personal purposes. In this manner Defendant has wrongfully appropriated millions of dollars of Company funds for his own personal use to the exclusion of the minority shareholders.

41.

By way of example only, Plaintiffs are informed and believe that Defendant, without Board approval, unilaterally invested more than $1,000,000 of Southern Ionics' funds and assets in The Ritz Theater and Conference Center, LLC. Such investment has no strategic alignment with Southern Ionics' chemical business and this investment was solely made for Defendant's personal purposes.

42.

Dan and Lucy Sundbeck are entitled to an accounting from Defendant to provide them with the discovery needed to uncover the true scope of past and continuing breaches of fiduciary duties owed to them by Defendant; to determine how much of their property and ownership interest in Southern Ionics, which Defendant held in trust for them, was diverted by Defendant for his personal use or purposes; and to determine the extent to which Defendant continues to profit from breaching fiduciary duties owed to Dan Sundbeck and Lucy Sundbeck.

43.

As minority shareholders Dan Sundbeck and Lucy Sundbeck are entitled to an accounting from Defendant to determine the details of all the transactions involving Southern Ionics, and to determine the full scope of Defendant's wrongful acts as majority shareholder of a closely held corporation. Dan Sundbeck and Lucy Sundbeck therefore demand and are entitled to receive a full and accurate accounting of all Defendant's financial activities from January of 2002 to the present.

## COUNT II

## BREACH OF FIDUCIARY DUTY

44.

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 43, inclusive, in this Paragraph 44.

45.

Defendant, as the controlling shareholder in a closely held corporation, in his individual capacity, owes fiduciary duties directly to Dan Sundbeck and Lucy Sundbeck as minority

-18-

shareholders. These fiduciary duties prohibit Defendant from using his position as majority shareholder to promote his personal interests at the expense of the interests of the minority shareholders and requires Defendant to deal with Dan Sundbeck and Lucy Sundbeck in strict fairness in every transaction involving the assets of Southern Ionics, never putting his interest before that of Dan Sundbeck and Lucy Sundbeck.

46.

Rather than honoring his fiduciary duties, Defendant has consistently and totally disregarded and violated those fiduciary duties by treating the property and assets of the Company as belonging solely to him without regard to the interests of Dan Sundbeck and Lucy Sundbeck as minority shareholders.

47.

In further breach of his fiduciary duties owed to Dan Sundbeck and Lucy Sundbeck, Defendant has engaged in oppressive conduct against them, including but not limited to, the wrongful appropriated corporate assets for his personal use or benefit; the purchase and renovation of the Ritz Theater and creation of the related LLC; the removal of Dan Sundbeck from the Company Board of Directors; the denial of any meaningful participation and voice in the operation and/or in the decision making process of Southern Ionics to Dan Sundbeck; the denial of any form of return on their investment in Southern Ionics to Dan Sundbeck and Lucy Sundbeck, the lone minority shareholders, while using Company assets as he pleases in his sole discretion; the manipulation of the Board of Directors of the Company to create the facade of an objective decision making process to justify his exercise of his sole discretion as to the use of Company assets; and, the withholding of business and financial information to which Plaintiffs are entitled.

-19-

48.

Defendant has further breached his fiduciary duties to Dan Sundbeck and Lucy Sundbeck by using his majority ownership and control to defeat their reasonable expectations of a return of their investment in, and a secure future with Southern Ionics as promised to them to induce them to join the family business as owners, not just employees. In response to that inducement, Dan Sundbeck has forgone other compensation to build equity in stock which Defendant's actions are designed and intended to render worthless, or to require the sale for pennies on the dollar. By fair value, Dan Sundbeck and Lucy Sundbeck's most valuable asset, obtained by them through 18 years of Dan's employment with Company is their interest in the Southern Ionics. These acts have directly and proximately caused injury to Plaintiffs making Defendant liable therefore.

## COUNT III

### JUDICIALLY ORDERED BUYOUT

49.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 48, inclusive in this Paragraph 49.

50.

As majority shareholder in the Company, Defendant Milton Sundbeck has wilfully engaged in oppressive conduct against Dan and Lucy Sundbeck, as set out herein, which would support judicial dissolution under Miss. Code Ann. § 79-4-14.34(I); however, Plaintiffs do not seek dissolution as a remedy. Rather, Plaintiffs seek the less severe remedy of an order establishing the fair value of Plaintiffs' stock in the Company and compelling Defendant to purchase their stock at such price. This remedy exists within the inherent equity power of the Court to fashion

-20-

alternative remedies to judicial dissolution and is recognized in both the common law and Mississippi law.

51.

By reason of his intentional and wrongful actions as described herein, Dan and Lucy Sundbeck ask for a judicially ordered buyout of their interest in Southern Ionics as a result of Defendant's oppressive conduct as an alternative to judicial dissolution.

## COUNT IV

## CORPORATE WASTE AND UNJUST ENRICHMENT

52.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51, inclusive in this Paragraph 52.

53.

As majority shareholder exercising his sole discretion without full disclosure, Defendant had a duty to the minority shareholders to manage the Company in a manner designed and intended to protect Plaintiffs' equity interest and to refrain from the waste of Company assets.

54.

By his actions as described herein, Defendant has engaged in intentional mismanagement of the Company for his own personal benefit to the exclusion of Plaintiffs. Such conduct constitutes waste of the Company assets and unjust enrichment of Defendant. These acts have directly and proximately caused injury to Plaintiffs making Defendant liable therefore.

## COUNT V

## ALTERNATIVE RELIEF

### 55.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 54, inclusive in this Paragraph 55.

### 56.

In the alternative, Dan and Lucy Sundbeck request such other, additional and affirmative relief as the Court may order in the premises including, but not limited to, (1) an order requiring Defendant to declare and pay dividends for all prior years in which Defendant is found to have breached his fiduciary duties to Plaintiffs based on a full accounting of all moneys and assets appropriated or used by Defendant to the exclusion of Plaintiffs, and requiring an annual accounting to the Court for all future years and the payment of dividends so long as Plaintiffs own or control their minority shareholder interest; (2) an order requiring Defendant to elect Dan Sundbeck to the Board of Directors of the Company and to hold monthly directors meetings providing complete financial information relied upon my management and accounting for all funds or things of value received by Defendant, directly or indirectly, so long as Plaintiffs own or control their minority shareholder interest; enjoining Defendant from transferring any aspect of the ownership, control of, or rights in any of his ownership interest in the company without 60 days notice to Plaintiffs and the Court; and such other relief as the Court deems necessary in the premises.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a full accounting of all money, property and things of value obtained, received or used by Defendant, including advances,

payments, loans, guarantees, sureties, and any other thing of value owned, controlled or held by the Company which has been transferred to, or used by Defendant during the period from January 1, 2002 to date, together with all documents and records relating to such activities in whatever form; and,

A finding by the Court that Defendant has breached fiduciary duties owed to Plaintiffs and/or engaged in oppressive conduct toward Plaintiffs, and/or engaged in mismanagement and/or waste of Company assets, and/or unjustly enriched himself to Plaintiffs' economic detriment, requiring Defendant to purchase Plaintiff's stock in the Company for fair value as determined by the Court plus pre-judgment interest from the date of Dan Sundbeck's agreement to the purchase of Plaintiffs' stock; and requiring said purchase to be completed within a reasonable time set by the Court; and further, that this Court appoint a receiver to manage the affairs of the Company from and after the entry of judgment against Defendant until such time as Defendant satisfies in full the judgment of this Court. Plaintiffs further demand that this Court enter an Order of affirmative relief requiring the immediate election of Dan Sundbeck to the Southern Ionics' Board of Directors until such time as the Court's judgment is fully discharged.

Alternatively, Plaintiffs demand that upon a finding by the Court that Defendant has breached fiduciary duties owing by him to Plaintiffs and/or that Defendant has engaged in oppressive conduct toward Plaintiffs, that the Court enter an Order of affirmative relief requiring declaration and payment of dividends in amounts determined by the Court, with interest, for every year Defendant is found to have been in breach of his fiduciary duties to Plaintiffs since January 1, 2002; requiring the payment of such dividends each year so long as Plaintiffs own any minority share interest in Southern Ionics, and requiring such other actions and procedures as may be

-23-

necessary to enforce such judgment.

Plaintiffs request all other, additional, and further relief to which they may be entitled.

This the 3rd day of February, 2010.

Respectfully submitted,

DANIEL M. SUNDBECK AND LUCY
SUNDBECK
By Their Attorneys
DANIEL, COKER, HORTON & BELL

C. MICHAEL ELLINGBURG

BRENDA B. BETHANY

AARON R. EDWARDS

C. MICHAEL ELLINGBURG - BAR # 5496
BRENDA B. BETHANY- BAR # 2477
AARON R. EDWARDS - BAR # 101578
DANIEL COKER HORTON & BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI 39236
TEL: (601) 969-7607
FAX: (601) 969-1116