# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

DANIEL M. SUNDBECK AND
LUCY SUNDBECK                                                                          PLAINTIFFS

V.                                                                              CAUSE NO. 1:10cv23

MILTON O. SUNDBECK, JR.                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are cross partial motions for summary judgment filed by Plaintiffs, Daniel M. Sundbeck and Lucy Sundbeck, and the Defendant, Milton O. Sundbeck, Jr [125, 172, 128]. After reviewing the motions, responses, and authorities, the Court finds as follows:

## BACKGROUND

Plaintiffs, Dan and Lucy Sundbeck, filed the current suit against Defendant, Milton O. Sundbeck, on February 4, 2010. The crux of the Complaint surrounds the legal rights Plaintiffs obtain due to their status as minority shareholders in Southern Ionics, Incorporated ("SII") – a company in which the Defendant is a majority shareholder. Plaintiffs collectively own approximately 5.4% of all issued and outstanding commercial stock in SII; Defendant owns all of the common stock not owned by Plaintiffs. SII is a closely-held corporation. Specifically, SII is a closely-held corporation undertaken by family members, as Plaintiffs are the natural son and daughter-in-law of the Defendant.

Plaintiffs bring several claims against the Defendant and, at the outset, the Court notes that it has struggled to discern between what Plaintiffs consider a "claim" and what they label

1

as mere background, factual evidence. However, after sorting through the tangled account describing the history of SII and the dejected breakdown of a father-son relationship, the claims brought against Defendant appear to be as follows: (i) conversion; (ii) corporate waste; (iii) unjust enrichment; (iv) breaches of fiduciary duties, which appear to surround the following: (a) the indemnification of Defendant by SII both for expenses in the Cheryl Sundbeck lawsuit as well as the current lawsuit, (b) Defendant's personal loans from SII, (c) Defendant's allegedly excessive compensation from SII, and (d) Defendant's alleged unequal use of assets of SII; (v) fraudulent misrepresentation; (vi) failure to pay dividends; (vii) minority oppression and squeeze out; and (viii) Defendant's alleged use of power to have Plaintiff Dan Sundbeck ejected from the SII Board of Directors.

It is undisputed that neither side is moving for summary judgment as to all the claims brought in this action. Instead, Plaintiffs move for summary judgment [128, 172] – arguing they are entitled to judgment as a matter of law – on four separate claims, and Defendant moves for summary judgment [125] claiming that many of Plaintiffs' actions are barred by the statute of limitations and/or are also barred because Plaintiffs ratified the Defendant's actions. In addition to the matters raised in the summary judgment motions, the Court also sua sponte issued an Order [183] raising concerns over whether many of Plaintiffs' claims are derivative in nature, as opposed to direct actions. The Court allowed, yet did not mandate, supplemental briefing on the issue. Both parties have now responded to the Court's sua sponte Order, and all summary judgment motions are thus ripe for judicial review.

## ANALYSIS AND DISCUSSION

I. <u>Derivative v. Direct</u>

In general, "an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative." Longanecker v. Diamondhead Country Club, 760 So. 2d 764, 768 (Miss. 2000) (quoting Bruno v. Se. Servs., Inc., 385 So. 2d 620, 622 (Miss. 1980)). In contrast, an action brought by a shareholder for harm done to an individual shareholder or a group of shareholders is a direct action. See Kahn v. Kaskel, 367 F. Supp. 784 (S.D.N.Y. 1973) (a class action by shareholders is based upon individual rights belonging to each member of the class); Von Brimer v. Whirlpool Corp., 367 F. Supp. 740 (N.D. Cal. 1973) (if the injury is to one of the shareholders and not the corporation, it is direct), *aff'd in part, rev'd on other grounds by* 536 F.2d 838 (9th Cir. 1976). It is admittedly not always easy to differentiate between a direct action and a derivative action. As the Mississippi Supreme Court recently noted, "[t]here is little case law in Mississippi which addresses the difference between derivative and direct actions, but the general rule is that derivative actions seek recovery for injuries to the corporation." Mathis v. ERA Franchise Sys., Inc., 25 So. 3d 298, 303 (Miss. 2009). The American Law Institute provides a helpful analysis in distinguishing between direct actions and derivative actions. Section 7.01 of the Principles of Corporate Governance states:

> (a) A derivative action may be brought in the name or right of a corporation by a holder . . . to redress an injury sustained by, or enforce a duty owed to, a corporation. An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.
>
> (b) A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, the holder. An action in

which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity.

A similar analysis can be found in Fletcher's Cyclopedia of the Law of Corporations*:*

> The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual shareholders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.

WILLIAM MEADE FLETCHER, 12B CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (rev. ed. 2009). "Thus, in determining whether the action belongs to the corporation or the individual, the focus of the inquiry is whether the corporation or the individual suffered injury." Mathis, 25 So. 3d at 303.

The Mississippi Supreme Court in Bruno v. Se. Services, Inc., 385 So. 2d 620, 622 (Miss. 1980) held that "an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative." However, the court in Derouen v. Murray, 604 So. 2d 1086 (Miss. 1992) discussed the fact that there is an exception available for closely-held corporations. Relying on the view of the Principles of Corporate Governance, § 701(d), the Derouen court stated as follows:

> In the case of a closely held corporation . . ., the court *in its discretion* may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

Derouen, 640 So. 2d at 1091 (emphasis added).

Here, the Court finds that Plaintiffs' claims are either direct in nature or qualify under the exception announced in Derouen. There is no suggestion that allowing the action to proceed will unfairly expose the corporation or the Defendant to a multiplicity of actions or that such will interfere with a fair distribution of the recovery among all interested persons. The Court need not, at least at this point in litigation, individually divide and label each of Plaintiffs' actions as derivative or direct. Instead, for purposes of summary judgment, it is only important that the Court has established that the exception set forth in Derouen is applicable to this action to the extent the Court determines that Plaintiffs' actions are in actuality "derivative." Thus, the Court concludes that Plaintiffs indeed have standing to bring the claims involved in this lawsuit.

II.     Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on certain "claims" that are barred by the three-year statute of limitation and/or were ratified by Plaintiffs. The "claims" in which Defendant moves for dismissal pursuant to the "applicable"[1] statute of limitation (Miss. Code Ann. § 15-1-49) and/or ratification are as follows: (i) transfers of stock to Cheryl Sundbeck and directorship of Cheryl on SII's Board pursuant to the divorce settlement between Defendant and Cheryl, which occurred before February 4, 2007[2]; (ii) Defendant (allegedly)

---

[1] To be clear, the Court is not, at this point, deciding one way or the other whether Miss. Code Ann. § 15-1-49 applies to all of Plaintiffs' claims. The Court draws the "applicable" language directly from Plaintiffs' brief in opposition to Defendant's summary judgment motion. See Plaintiffs' Memorandum in Support of Response to Defendant's Motion for Partial Summary Judgment at 3. Thus, in Plaintiffs' brief, they concede that this section applies and, for purposes of this summary judgment motion, the Court accepts Plaintiffs' concession concerning the applicable statute of limitations.

[2] Under Miss. Code Ann. § 15-1-49, "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such

causing SII not to pay dividends prior to February 4, 2007; (iii) Defendant's termination of employment of Joe and Kristen Stevens from SII in 2003; (iv) the indemnification of Defendant from SII for the Cheryl Sundbeck lawsuit; (v) lawsuits filed by Defendant against Cheryl Sundbeck and Joe Stevens in 2006; (vi) excessive compensation allegedly paid to Defendant prior to February 4, 2007; (vii) Defendant's alleged payment of bonuses to himself prior to February 4, 2007; (viii) Defendant allegedly causing SII to recognize and redeem a preferred stock interest in SII in 2006; and (ix) Defendant's use of company assets prior to February 4, 2007.

Instead of disputing ratification and/or the applicability of the statute of limitations, Plaintiffs instead state that none of these alleged "claims" are actually causes of action. That is, Plaintiffs assert that these "claims" are background facts that should be allowed in as evidence. As Defendant notes, with the exception for certain payments by SII to Defendant for indemnification in the Cheryl Sundbeck litigation, Plaintiffs do not disagree with the Defendant's statute of limitations argument. Given this, Defendant's motion for summary judgment is granted as to the "claims" that Plaintiffs concede are not causes of action. Whether these facts are proper as background evidence is one the Court will address when ruling on Defendant's motion in limine. As to the matter not conceded by Plaintiffs (i.e., indemnification for the Cheryl Sundbeck lawsuit), the Court addresses such an issue below in its discussion of Plaintiffs' motions for summary judgment.

III.  Plaintiffs' Motions for Summary Judgment

---

action accrued, and not after." In this case, the original Complaint was filed on February 4, 2010; thus, under Miss. Code Ann. § 15-1-49, actions accruing prior to February 4, 2007 would be time barred.

Plaintiffs move for summary judgment on four separate claims: (i) breach of fiduciary duty due to the investment of SII funds in the Ritz Theater and Conference Center; (2) indemnification from SII of the Cheryl Sundbeck lawsuit;[3] (3) loans made to Defendant from SII; and (4) shareholder oppression. The Court discusses each of these in turn.[4]

*Ritz Theater and Conference Center*

Plaintiffs assert that Defendant breached his fiduciary duty to minority shareholders by remodeling the Ritz Theater and creating the Ritz Theater and Conference Center with "no reasonable basis to expect anything except an ongoing loss for SII." Plaintiffs argue that Defendant breached his fiduciary duty as a matter of law because he invested SII money into the Ritz even though the Ritz had a market value of a negative amount and has yet to turn a profit. Defendant counters and asserts that the purpose of the renovation of the Ritz was not a quick monetary investment, but instead a return on community investment. It appears undisputed that, before renovation, the Ritz was a dilapidated, old building that smelled badly, was an eye sore in the community, and located only half a block from the corporate headquarters of SII. According to Defendant, the decision of SII to invest in the Ritz property was to enhance and upgrade the downtown area immediately adjacent to SII headquarters and to provide a suitable venue for corporate gatherings and training sessions. There is no

---

[3] As noted above, the Court includes and combines in its discussion of Plaintiffs' motions for summary judgment a discussion of Defendant's motion concerning indemnification for the Cheryl Sundbeck lawsuit.

[4] There is *much* discussion throughout the motions and responses concerning Faught v. Morris, 543 So. 2d 167 (Miss. 1989), and how it applies to this case. Faught clearly has implications affecting this case; however, the Court sees no reason to discuss the facts of Faught in length, given that it does not impact the outcome of the Court's decisions on summary judgment. The Court obviously recognizes that majority shareholders in a close corporation owe a duty to minority shareholders under Faught and controlling Mississippi law.

evidence presented that the profitability of SII was harmed by the investment in the Ritz. In fact, Defendant contends that SII has realized a great deal in tax credit from the project.

While there could be a breach of fiduciary duty that somehow stems from the renovation of the Ritz, it is not proper for the Court to make this determination at the summary-judgment stage. Plaintiffs' main reasoning for their summary judgment motions concerns the fact that the Ritz has never turned a profit. However, this fact alone does not justify summary judgment, especially when viewed in the light most favorable to the non-moving party. If such were the case, corporations – and the directors and officers of those corporations – would breach a fiduciary duty each time an investment did not realize an economic return, despite the fact that such an investment might have been made for community goodwill and/or to realize a potential tax credit. Accordingly, there are several material facts in dispute concerning why the Ritz was purchased and renovated and whether such renovation was a breach of Defendant's fiduciary duty. For this reason, Plaintiffs' motion for summary judgment is denied as to this claim.

*Indemnification for the Cheryl Sundbeck Lawsuit*

Plaintiffs next seek summary judgment on their claim that Defendant breached his fiduciary duty by obtaining indemnification for attorneys fees and expenses in the Cheryl Sundbeck litigation. As to this action, Defendant asserts that the claim fails for three reasons: (1) the indemnification actions were presented to and approved by the shareholders and/or Board of Directors in accordance with Miss. Code Ann. § 79-4-8.53; (2) Plaintiffs ratified such action; and (3) the indemnification actions are barred by the statute of limitations.

The Court begins by providing some background information. The bylaws of SII have provided for indemnification of directors and officers "to the fullest extent" authorized by law since 1997. In 2005, an amendment to the bylaws updated the indemnification provision. As such, indemnification is permissible under the SII bylaws to the fullest extent authorized by Miss. Code Ann. § 79-4-8.53.[5] Prior to the filing of the Cheryl Sundbeck lawsuit, Defendant was provided a "draft" complaint before the SII September 2005 meeting. This draft complaint sought dissolution of SII. Although the filed complaint differed from the draft complaint, in that there was no threat of dissolution, it appears undisputed that Defendant was authorized to be indemnified for expenses (including attorneys fees) for the Cheryl Sundbeck lawsuit by action of the shareholders (including Plaintiffs) at a special meeting occurring on September 13, 2005. Specifically, Dan Sundbeck – as an attending shareholder and holding one proxy for Lucy Sundbeck – voted in favor of Defendant being indemnified for the Cheryl Sundbeck lawsuit. Likewise, Dan Sundbeck – as a member of the Board of Directors – also ratified this action on February 14, 2008. Apparently, both Dan Sundbeck and Lucy Sundbeck also signed off on the minutes approving the settlement between Cheryl Sundbeck and the Defendant, including the redemption of the stock owned by Cheryl Sundbeck and Kristen and Joe Stevens. Given Plaintiffs' actions, Defendant contends that Plaintiffs should not be allowed to now complain about actions in which they previously approved and ratified. See Gray v. Aspironal Laboratories, 24 F.2d 97 (5th Cir. 1928); Keen v. Brookhaven Academy, Inc., 28 So. 3d 1285, 1289 (Miss. 2010).

---

[5] The Court notes at the outset that both sides concede that there is no Mississippi case speaking directly to Miss. Code Ann. § 79-4-8.53.

In response to Defendant's ratification argument, Plaintiffs essentially contend that the doctrine of estoppel by ratification is inapplicable because Plaintiffs lacked the requisite information and full knowledge of the facts surrounding the Cheryl Sundbeck lawsuit and indemnification. According to Plaintiffs, the Defendant "told [Dan Sundbeck] to initially observe meetings . . . [and] rubber stamp [Defendant's] directives." Further, Plaintiffs assert that Dan Sundbeck was "provided no information or false information on issues brought to the Board." While the Court recognizes Defendant's argument concerning two different "types" of ratification, the Court nonetheless finds that material facts exist as to whether Plaintiffs were provided "knowledge of the facts"[6] in order to justify ratification of the Cheryl Sundbeck lawsuit. That is, given the context of the parties involved in this lawsuit and the fact that the crux of the allegations concern alleged minority oppression, whether Plaintiffs actually received knowledge of the relevant facts is at least factually disputed.[7] As such, whether ratification bars Plaintiffs' cause of action concerning the indemnification of Defendant for the Cheryl Sundbeck lawsuit is not a determination to be made at the summary-judgment stage. The Court will undertake the ratification determination upon resolving the factual disputes regarding the information provided to Plaintiffs about such actions.

---

[6] See WILLIAM MEADE FLETCHER, 3 CYCLOPEDIA OF THE LAW OF CORPORATIONS § 987.10 (2009 rev. ed.):
> Individual shareholders may be estopped to attack a contract or other transaction on behalf of the corporation on the ground that directors or other officers were personally interested. If they participated or consented, or if they have ratified the transaction *with knowledge of the facts*, they are clearly estopped. Shareholders cannot complain of their own acts as directors.

[7] However, the Court notes that, if it is determined that the Plaintiffs indeed possessed such knowledge of the pertinent facts, the other "elements" of ratification appear to be satisfied.

Defendant also contends that the statute of limitations bars the indemnification of Defendant for the expenses incurred in the Cheryl Sundbeck lawsuit. The indemnification payments for this lawsuit were made in 2005. According to Defendant, all causes of action made prior to February 4, 2007 are barred by the statute of limitations found in Mississippi Code Annotated Section 15-1-49. Because the Court is still receiving supplemental briefing in this action from both parties, including briefing from Plaintiffs on the statute of limitations issue, the Court currently defers ruling on whether the statute of limitation bars this action. Upon receiving all briefing from the parties, the Court will make such a determination.[8]

---

[8] Given this, the Court also defers ruling on Plaintiffs' argument that Mississippi Code Annotated Section 79-4-8.53 (the indemnification provision) does not apply to this case because the Defendant was sued in his "individual" as opposed to his "official" capacity. Essentially, Plaintiffs' argument is that Mississippi Code Annotated Section 79-4-8.53 applies only when an individual is sued because he or she "is a director or officer" and, here, Plaintiffs couched their complaint in terms of suing Defendant because he is a majority shareholder. The Court initially notes that Plaintiffs' argument concerning individual versus official capacity is not well taken. Defendant was not sued as a mere "individual"; rather, he was sued because of the role he plays at SII. Yet, Plaintiffs' argument that the statute is inapplicable because Defendant was technically sued as a majority shareholder, as opposed to a director/officer, is a more colorable argument. Mississippi Code Annotated Section 79-4-8.53 allows indemnification for expenses "incurred in connection with the proceeding by an individual who is a party to the proceeding *because that individual is a member of the board of directors*." Given this reading of the statute, Plaintiffs assert that indemnification is never proper for individuals sued as majority shareholders. Plaintiffs' argument, while creative and perhaps in theory meritorious, is undercut by several factors present in this action. First, just because Plaintiffs couch their pleadings in terms of suing Defendant as a "majority shareholder," it does not necessarily follow that the actions sued for were taken by the Defendant as a majority shareholder, as opposed to as a director. For example, the failure to pay out dividends is a function of the Board of Directors, not a function the Defendant would have undertaken only as a shareholder. If the Court were to hold that one technically sued as a majority shareholder could never be indemnified, even if the actions sued for were "because the individual was a director," this would turn the indemnification statute into a mere pleading rule. No one would ever sue an individual in their capacity as a director, if they could merely label their complaint as a shareholder action and prohibit the defendant from ever claiming indemnity. By way of example, when courts are examining whether diversity jurisdiction exists, they must occasionally look beyond the named parties and consider the citizenship of

However, the Court does note that Plaintiffs, by referring to the three-year statute of limitation found in Mississippi Code Annotated Section 15-1-49 as "applicable," appear to entirely concede that all "claims" occurring before February 4, 2007 are barred. The Court agrees with the Defendant that it appears that, while Plaintiffs do not label their arguments as such, Plaintiffs are attempting to assert that the continuing tort doctrine, or some form of fraudulent concealment, applies to the action of indemnification of Defendant from the Cheryl Sundbeck lawsuit. As a cautionary matter, the Court forewarns that from Plaintiffs' briefs thus far submitted, it does not appear that either of those doctrines is applicable. However, a noted, the Court declines to make this determination until all supplemental briefs are submitted.

*Loans from SII to Defendant*

Plaintiffs assert an additional breach of fiduciary duty stemming from two personal loans SII made to the Defendant. In 2010, SII made an unsecured cash advance to Defendant in exchange for a note receivable which bore at 4% interest. Similarly, in 2010, SII made a second unsecured cash advance to Defendant in exchange for another note receivable which also bore 4% interest. According to Plaintiffs, "[Defendant] apparently used these two cash advances from SII to get rid of all his high interest outstanding bank loans." Also according

---

the "real parties in interest." See Navarro Savings Ass'n v. Lee, 446 U.S. 458, 460, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980); Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003). Courts must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. Id. It appears the Court should do the same in this instance. That is, if Defendant actually took some of the complained-of actions in his role as a director, then in essence he was indeed sued "because [he] is a member of the board of directors." Second, because this is a close corporation, with Defendant owning the majority of the shares, serving on the Board of Directors, and functioning as the President of the company, his roles are inextricably interwoven. Apparently, no court has ever addressed this issue, and this Court declines to rule on the issue at this point in litigation, as it is deferring the motions for summary judgment on the indemnification claim. Further, if the Court rules that this action is barred by the statute of limitations, then the argument is moot.

to Plaintiffs, these types of loans "are a common method used by officers to drain corporate earnings." Plaintiffs assert that "since the officers and directors of a corporation occupy a fiduciary duty relation towards the shareholder[,] they cannot acquire a personal gain from the corporation."

In quite stark contrast, Defendant contends that SII had cash on hand for which it received a 1% interest from its banking partner, and Defendant had a loan with a bank which he paid a 4% interest rate. Thus, in an effort to maximize the return on SII's cash, SII loaned Defendant the funds to pay off his bank debt and enter into a similar financing structure with SII so that SII would profit from the increased interest rate.[9] Given the factual scenario surrounding the two loans, the Court is unable to conclude that, as a matter of law, such actions constitute a breach of a fiduciary duty on the part of the Defendant. While Plaintiffs' proffer a blanket assertion that loans are often used to drain corporate earnings, Plaintiffs provide no concrete evidence that the loans *in this case* (as opposed to loans in the abstract) actually drained SII corporate earnings. As such, summary judgment is improper, and Plaintiffs' motion is denied as to this claim.

*Shareholder Oppression*

Plaintiffs next contend that they are entitled to summary judgment on their claim for shareholder oppression. The doctrine of shareholder oppression basically protects the close corporation minority stockholder from the improper exercise of majority control. In order to support their oppression claim, Plaintiffs present a myriad of "examples" to the Court in an attempt to establish a "pattern" of allegedly improper action conducted by Defendant in his

---

[9] To support this contention, Defendant provided the affidavit of Steve Mitchener, the Chief Financial Officer of SII.

exercise of majority control. According to Plaintiffs, examples of oppressive conduct by the Defendant include the following:

(1) Making investments allegedly not in the corporation's best interest, including the Ritz Theater and the personal loans.
(2) Freezing out minority shareholders from business, specifically, Defendant's changing the number of members on the SII Board of Directors and removing Plaintiff Dan Sundbeck from the Board of Directors.
(3) Defendant paying himself allegedly excessive compensation, not declaring dividends, using SII funds to indemnify the Defendant from lawsuits, and investing in the Ritz Theater.
(4) Unequal use of corporate assets for personal purposes.

The Court responds to each of these allegations separately. In regards to the Ritz Theater and the loans made from SII to Defendant, the Court has already examined these allegations above, and there is no reason to rehash the details of such transactions here. As noted, there are heavily-disputed factual allegations, making summary judgment improper, concerning the actions taken by the Defendant in regards to the Ritz and the personal loans.

As far as Defendant's compensation goes, Plaintiffs allege it is excessive. However, Defendant has presented to the Court a report prepared by Mercer Capital Management, Incorporated to refute such allegations. According to this report, as well as the affidavit of Chris Mercer (Mercer's Chief Executive Officer), Defendant's compensation is not unreasonable or wasteful to the minority, the profitability of SII exceeds that within the industry, the profitability of SII is in fact a multiple of its value of just a few years ago, and the returns on minority shareholder stock substantially exceed investment returns in the industry. Given this, the Court cannot merely accept Plaintiffs' assertion – to the exclusion of the Defendant's – and conclude as a matter of law that Defendant's compensation is "excessive," especially in the face of an outside report indicating otherwise. Along the same

lines, Plaintiffs contend that Defendant's expensing of a vacation in San Diego in 2008, as well as Defendant's use of the corporate jet, constitutes a waste of corporate assets, thus signifying minority oppression. In responding to this argument, Defendant presents both his own affidavit and the affidavit of Steve Mitchener, the Chief Financial Officer of SII. According to the attached affidavits, Defendant personally paid for the use of the corporate jet on every occasion in which he used it. Similarly, Defendant avers that the trip to San Diego had a business purpose and, ironically, both of the Plaintiffs appear to have attended and participated in this trip.

In regards to the payment of dividends, it appears entirely undisputed from the record that SII has never paid dividends and that neither of the Plaintiffs ever once moved for nor requested that SII declare dividends. While the refusal to declare dividends can certainly, in some instances, provide insight into whether minority shareholders are being oppressed, Plaintiffs provide *no* evidence or support for the proposition that they had a right – as a matter of law – to have dividends declared in this case or that SII's refusal to declare such dividends is actually an indication of oppression. In fact, "[t]he declaration and payment of dividends is a matter of internal management solely within the discretion of directors[10] and, unless the bylaws or articles of incorporation place some limitation upon their discretion, a court will not interfere with their business judgment in the absence of fraud, bad faith or other clear abuse of discretion." WILLIAM MEADE FLETCHER, 11 CYCLOPEDIA OF THE LAW OF Corporations § 5325 (rev. ed. 2011); 18 C.J.S. CORPORATIONS § 365 ("As a general rule, the question of a

---

[10] See also State Farm Mutual Automobile Insurance Co. v. Superior Court, 114 Cal App 4th 434, 8 Cal Rptr 3d 56 (2003) (applying Illinois law) (citing to WILLIAM MEADE FLETCHER, 11 CYCLOPEDIA OF THE LAW OF Corporations § 5325).

declaration of dividends is a matter of internal corporate discretion . . . The mere fact that a corporation has funds from which dividends could legally be paid, even if those funds are in a large amount, does not oblige its directors to declare a dividend, or, if a dividend has been declared, to declare a higher dividend."). Concluding that the failure to pay dividends in the case *sub judice* necessarily amounts to shareholder oppression is not a decision appropriate at the summary-judgment stage.

Plaintiff Dan Sundbeck additionally alleges that Defendant's voting of him off the Board of Directors constitutes oppression. Plaintiffs never suggest that Dan Sundbeck had an absolute right, as a matter of law, to serve on the SII Board of Directors. Rather, Plaintiffs contend that Dan Sundbeck had a "reasonable expectation" to serve on the Board and that Defendant based his actions in voting Dan off the Board on purely personal reasons. Defendant counters this argument with issues related to Dan Sundbeck's resignation from employment with SII. It appears undisputed that Dan Sundbeck resigned from SII in lieu of termination after he violated the company's drug policy. What exactly transpired and why Dan Sundbeck was voted off the Board of Directors, as well as whether Dan had a reasonable expectation of serving on the Board, are all factually-disputed allegations. While the Court will ultimately decide whether shareholder oppression has occurred, the Court will only decide such, as a matter of law, after all of the pertinent factual allegations and disputes are resolved. Accordingly, Plaintiffs' summary judgment motion is denied as to this action.

**CONCLUSION**

For the reasons discussed above, Defendant's Motion for Summary Judgment [125] is granted in part. Defendant's Motion is granted to the extent Plaintiffs concede the majority of

their "claims" are not actually causes of action. Plaintiffs' Motions for Summary Judgment [128, 172] are denied. Material facts exist concerning claims of shareholder oppression and whether Defendant breached his fiduciary duties owed to Plaintiffs as minority shareholders in SII. The Court defers ruling on the cross motions for summary judgment regarding Defendant's indemnification in the Cheryl Sundbeck lawsuit and whether such an action is barred by ratification and/or the statute of limitations.

So ORDERED on this, the 3rd day of October, 2011

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**