**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

DANIEL M. SUNDBECK AND
LUCY SUNDBECK                                                                         PLAINTIFFS

VS.                                                                                            NO. 1:10CV23-A-D

MILTON O. SUNDBECK, JR.                                                                DEFENDANT

**OPINION AND ORDER**

On October 3, 2011, the Court entered an Order [219] granting in part and deferring in part Defendant's Motion for Summary Judgment [125]. The Court's Order [219] also denied in part and deferred in part the Plaintiffs' Motions for Summary Judgment [128, 172]. The claim in which the Court deferred ruling on arises from an alleged breach of fiduciary duty by Defendant Milton Sundbeck. Specifically, Plaintiffs claim that Defendant breached his fiduciary duty by "improperly causing SII to pay for his personal attorney fees and expenses" in the Cheryl Sundbeck lawsuit filed against Defendant in 2005. Defendant contends, among other things, that this claim is barred by the statute of limitations found in Mississippi Code Annotated Section 15-1-49. Because, at the time of ruling on the summary judgment motions, the Court was still allowing briefing from Plaintiffs on the statute of limitations issue, the Court deferred ruling on whether or not the statute bars Plaintiffs' claim. All supplemental briefing has now been submitted, and the Court finds that Plaintiffs' claim is barred by the three-year statute of limitations found in Section 15-1-49.

A.   Applicability of Section 15-1-49 to Breach of Fiduciary Claim

Mississippi Code Annotated Section 15-1-49 states as follows:

1

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

MISS. CODE ANN. § 15-1-49(1). In Plaintiffs' Memorandum in Support of Response to Defendant's Motion for Partial Summary Judgment, Plaintiffs conceded that Section 15-1-49(1) is "applicable" to this action. Further, after oral argument in this case, the Court allowed Plaintiffs an opportunity to address, or actually readdress, the statute of limitations issue. Plaintiffs submitted briefing and never disputed the applicability of the three-year bar on claims of this nature. Given this, the Court concludes that the applicable statute of limitations for breach of fiduciary duty due to Defendant's indemnification of the Cheryl Sundbeck lawsuit is three years pursuant to Section 15-1-49. See CitiFinancial Mortgage Co. v. Washington, 967 So. 2d 16, 17 (Miss. 2007) (ruling three-year statute of limitations applies to breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, and breach of contract).

B. Tolling of Statute of Limitations

While not disputing that the three-year statute of limitations applies to this case, Plaintiffs do contend that the statute was tolled, causing the indemnification claim to allegedly not be time barred. The Court addresses Plaintiffs' concerns, along with issues relevant yet not raised by Plaintiffs, in turn below. However, before doing so, the Court provides some background evidence concerning the Cheryl Sundbeck lawsuit as it relates to the tolling of the statute of limitations issue(s):

> ➢ January 1997:    SII bylaws amended "to provide indemnification to directors and officers to the fullest extent, authorized by and in compliance with, Miss. Code Ann. § 79-4-8.50 through 8.59 (1997)."
>
> ➢ Early 2005:      Draft complaint of the Cheryl Sundbeck lawsuit sent to

> ➢ September 2005: Defendant alleging broad relief, including dissolution of SII.
>
> ➢ September 2005: The Board of Directors voted to approve indemnification of the litigation expenses of Milton Sundbeck related to the Cheryl Sundbeck litigation. This occurred at a Special Meeting of the Shareholders and Board of Directors of SII. At this special meeting, both Dan and Lucy Sundbeck participated in the shareholders meeting by virtue of their proxy given to John W. Crowell.

*Fraudulent Concealment*

Plaintiffs first contend that the statute of limitations is tolled by the doctrine of fraudulent concealment as set forth in Mississippi Code Annotated § 15-1-67, which states:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

MISS. CODE ANN. § 15–1–67; see also Robinson v. Cobb, 763 So.2d 883, 887 (Miss. 2000) (holding that "[f]raudulent concealment of a cause of action tolls its statute of limitations"). Plaintiffs submit that fraudulent concealment tolling applies in this case because "Dan's testimony is that he never saw Cheryl's Complaint and that Milton represented to him that Cheryl's lawsuit included SII and put SII at risk. Dan had no reason to question Milton's material misrepresentations and did not know they were false until the filing of the present suit." Further, Plaintiffs contend that neither Dan nor Lucy were ever aware of the indemnification payments until 2009.

Under Mississippi law, a plaintiff asserting fraudulent concealment as a basis for tolling the limitations period has "a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [her] part to discover it." Stephens v. Equitable Life Assurance Soc'y of the United States, 850

So. 2d 78, 84 (Miss. 2003). As to the first requirement, when a fiduciary relationship exists, the failure to disclose can be an affirmative act. See Poe v. Summers, 11 So. 3d 129, 134 (Miss. Ct. App. 2009). However, the requirement of proof of an affirmative act refers *not* to proof of the act that gives rise to the claim but rather to a subsequent affirmative act of concealment. See Liddell v. First Family Financial Servs., Inc., 146 F. App'x 748, 751 (5th Cir. 2005) (highlighting that part of Mississippi fraudulent concealment doctrine requiring that affirmative acts of concealment must occur "after the transactions at issue"); Ross v. Citifinancial, Inc., 344 F.3d 458, 464 (5th Cir. 2003) ("Mississippi law is unambiguous: Plaintiffs must prove a *subsequent* affirmative act of fraudulent concealment to toll the limitations.") (emphasis added). As to the second requirement, "the plaintiffs must show that they failed, despite the exercise of due diligence on their part, to discover the facts that form the basis of their [ ] claim." In re Catfish Antitrust Litigation, 908 F. Supp. 400, 407 (N.D. Miss. 1995).

The Court finds that Plaintiffs' claim of fraudulent concealment tolling the statute of limitations fails for numerous reasons. As noted above, there was a draft complaint sent to the Defendant prior to the September 2005 special meeting. This draft complaint sought broad relief, including dissolution of SII. The filed complaint did not threaten judicial dissolution. Apparently, Plaintiffs' main reasoning for alleging that fraudulent concealment applies is because when Dan Sundbeck asked the Defendant about the Cheryl Sundbeck lawsuit, Defendant represented that it threatened action against SII. This argument is not well taken as it relates to fraudulent concealment. First, the breach of fiduciary duty and "oppressive act" of Defendant that the Plaintiffs allege concerns not the basis of the underlying lawsuit; instead, it is the 2005 indemnification of Defendant for the lawsuit. Thus, the relevant act of concealment needed to ignite the tolling of the statute under this doctrine is a *subsequent* affirmative act

4

concealing the 2005 *indemnification* – not an affirmative act allegedly misrepresenting what exactly the lawsuit was about.

More importantly, however, is that – even assuming Plaintiffs can meet the first prong of the fraudulent concealment doctrine due to an existing fiduciary duty owed to Plaintiffs as minority shareholders, they fail to demonstrate that they exercised due diligence to discover the claim. In fact, Plaintiffs fail to even allege this element, as Plaintiffs essentially argue that they did not, and should have been required to, engage in due diligence to discover the indemnification payment. Plaintiffs initially assert that they could not access the relevant information concerning the Cheryl Sundbeck lawsuit due to a confidentially order. Defendant counters and asserts that the Cheryl Sundbeck case is public record in the Chancery Court of Clay County, Cause No. 2006-0236. In response to this, the Plaintiffs change course and argue that Dan should not have been required to look for the actual complaint because this "assumes knowledge of the legal system" which Dan denies having. This argument essentially concedes that Dan not only failed to exercise due diligence, but he failed to exercise any diligence. As Defendant points out, the lawsuit is public record and, in Mississippi, "an alleged fraudulent concealment does not toll the statute of limitations for matters of public record." Walton v. Walton, 52 So. 2d 468, 472 (Miss. App. 2011) (citing O'Neal Steel, Inc. v. Millette, 797 So. 2d 869, 875 (Miss. 2001)).

While Dan contends that he was not "aware" that SII had paid Defendant's attorney fees until 2009, such an argument (especially as it relates to "due diligence") is refuted by the fact that Dan and Lucy Sundbeck participated in the 2005 shareholders and board of directors

meeting concerning indemnification by virtue of a proxy given to John W. Crowell.[1] While Dan and Lucy contend that they acted as a mere "rubber stamp" at the direction of the Defendant, this does not excuse the fact that to avail themselves to the doctrine of fraudulent concealment, they must show they exercised due diligence.[2] Thus, based on the foregoing reasons, Plaintiffs have not sustained their burden of demonstrating fraudulent concealment, and the Court will not toll the statute of limitations.

*Adverse Domination Doctrine*

In responding to Defendant's motion in limine, Plaintiffs – *for the first time* – assert that the adverse domination doctrine is applicable to this action. This doctrine is applied to toll the statute of limitations "while a corporate plaintiff continues under the domination of the wrongdoers . . . In other words, the statute does not begin to run until they cease to be directors." WILLIAM MEADE FLETCHER, 3A CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1306.20 (rev. ed. 2009). The adverse domination doctrine rests on the theory that if the wrongdoers controlled the corporation through a majority of stock ownership and control of the directorate, there would consequently be no one to sue them. Id.; see also, e.g., FDIC v. Henderson, 61 F.3d 421 (5th Cir. 1995) (applying Texas law and finding that "one rationale for the doctrine is that a wrongdoing corporate officer or director will seek to hide his or her wrongful conduct from the corporation") (internal quotations omitted); Resolution Trust Corp. v. Franz, 909 F. Supp. 1128 (N.D. Ill. 1995). Similarly, another rationale for the doctrine is that where the agents of the corporation

---

[1] Dan also voted, while he was serving on the Board of Directors, to ratify this act in 2008.

[2] As noted, Plaintiffs have not only failed to demonstrate they exercised due diligence, but Plaintiffs have failed to even actually allege such. In fact, in their response to Defendant's motion in limine (where they once again address fraudulent concealment), Plaintiffs do not mention *any* type of due diligence.

who know of the injury are themselves the wrongdoers, the agents' knowledge should not be imputed to the corporation. See Aiello v. Aiello, 852 N.E.2d 68 (Mass. 2006).

For the following reasons, the Court finds that the adverse domination doctrine is inapplicable here.³ Plaintiffs' claims are either direct causes of actions or are proceeding as direct actions under the discretionary exception recognized in Mississippi for derivative actions in closely-held corporations. Yet, the adverse domination doctrine is applicable to corporate actions, not direct actions pursued by an individual minority shareholder. Further, the type of action in this case does not even comport with the rationale(s) behind the doctrine. As the Fifth Circuit noted in FDIC v. Shrader & York, 991 F.2d 216, 227 (5th Cir. 1993), the adverse domination doctrine is a "very narrow doctrine" that has "been applied to suits *by a corporation* against the officers or directors of that company."⁴ (emphasis added); FDIC v. Henderson, 61 F.3d at 425-26 (noting that the doctrine is a common law doctrine "used to toll the limitations *on a corporate action* while the corporation is controlled by those culpably involved in the wrongful

---

³ The Court notes that Plaintiffs failed to provide any authority for the proposition that this doctrine has been adopted in Mississippi. However, the doctrine has actually been quite widely applied by federal courts in cases involving corporate causes of actions against directors and officers. See, e.g., Farmers & Merchants Nat. Bank v. Bryan, 902 F.2d 1520 (10th Cir. 1990); IIT, an Intern. Inv. Trust v. Cornfeld, 619 F.2d 909 (2d Cir. 1980); International Railways of Central America v. United Fruit Co., 373 F.2d 408 (2d Cir.), *cert. denied*, 402 387 U.S. 921, 87 S. Ct. 2031, 18 L. Ed. 2d 975 (1967); Resolution Trust Corp. v. Kerr, 804 F. Supp. 1091 (W.D. Ark. 1992); Resolution Trust Corp. v. Gallagher, 800 F. Supp. 595 (N.D. Ill. 1992); Resolution Trust Corp. v. Gardner, 798 F. Supp. 790 (D.D.C. 1992); FDIC v. Howse, 736 F. Supp. 1437 (S.D. Tex. 1990); FDIC v. Greenwood, 739 F. Supp. 450 (C.D. Ill. 1989); FDIC v. Carlson, 698 F. Supp. 178 (D. Minn. 1988); Federal Sav. and Loan Ins. Corp. v. Burdette, 696 F. Supp. 1196 (E.D. Tenn. 1988); FDIC v. Hudson, 673 F. Supp. 1039 (D. Kan. 1987); Federal Sav. and Loan Ins. Corp. v. Williams, 599 F. Supp. 1184 (D. Md. 1984); FDIC v. Bird, 516 F. Supp. 647 (D.P.R. 1981); Saylor v. Lindsley, 302 F. Supp. 1174 (S.D.N.Y. 1969).

⁴ The Court finds the fact that Plaintiffs argue for the applicability of the adverse domination doctrine to be curious. First, the doctrine only applies to corporate actions. Plaintiffs have continuously asserted they are not bringing a corporate action. Second, the action only applies to lawsuits brought against directors and officers. Plaintiffs have (again) repeatedly argued that they did not sue the Defendant in his capacity as a director or an officer.

conduct on which the action is based") (emphasis added). As such, the doctrine is not applicable here; thus, it does not toll the limitations period.

*Continuing Tort Doctrine*

While the Plaintiffs do not actually allege that the continuing tort doctrine is applicable here, in portions of their briefs, Plaintiffs make arguments employing language similar to that used in cases analyzing this doctrine. Thus, to err on the side of caution and thoroughness, the Court addresses the doctrine's applicability to this action.

Under Mississippi law, "A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Pierce v. Cook, 992 So. 2d 612, 619 (¶ 25) (Miss. 2008) (quoting Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144, 148 (¶ 17) (Miss. 1998)). The Mississippi Supreme Court has described these continual acts as "wrongful conduct that is repeated until desisted," emphasizing it is the repeated conduct, not the repeated injury that tolls the statute of limitations. Id.; Bellum v. PCE Constructors, Inc., 407 F.3d 734, 742 (5th Cir. 2005) (finding that, under Mississippi law, "[t]he continuing tort doctrine does not apply when a plaintiff [ ] simply alleges that harm reverberates from one wrongful act or omission") (internal quotations omitted).

Here, the act of indemnifying the Defendant for the Cheryl Sundbeck lawsuit occurred in 2005. Plaintiffs never allege any continuing wrongful *conduct* concerning this very action, instead only alleging a continuing *injury* to them now from the alleged-wrongful indemnification payments in 2005.[5] As such, the Court finds this doctrine inapplicable.

---

[5] In Roemmich v. Eagle Eye Development, 526 F.3d 343 (8th Cir. 2008), the court was faced with an action for breach of fiduciary duty and whether the continuing tort doctrine was applicable. The court found the doctrine inapplicable and noted,
> A series of wrongs is only continuous for the purposes of this doctrine, however, "when no single incident in a chain of tort[i]ous activity can fairly or realistically

*The Discovery Rule*

Plaintiffs never articulate in their briefs that the "discovery rule" is applicable in this case. However, the Court nevertheless addresses the issue. This rule essentially governs when an action accrues. In Angle v. Koppers, Inc., 42 So. 3d 1 (Miss. 2010), the Mississippi Supreme Court held that an action accrues upon discovery of the injury. Here, Plaintiffs assert that they were not aware of the indemnification until 2009. While the discovery rule does exist in conjunction with Section 15-1-49, see id. at 5, the rule does not operate in this case to avoid the limitations bar.

The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them. Wayne General Hosp. v. Hayes, 868 So. 2d 997, 1001 (Miss. 2004). Mississippi courts have consistently held that a plaintiff seeking to avail himself of the tolling provided by the discovery rule must show that he "exercise[d] reasonable diligence in determining whether an injury suffered is actionable." See, e.g., Blailock ex rel.

---

be identified as the cause of significant harm." 54 C.J.S. LIMITATIONS OF ACTIONS § 194 (2008). For this reason, the Seventh Circuit has recently observed that instead of continuity, the doctrine really focuses on cumulativeness: "The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Limestone Dev. Corp. v. Village of Lemont, 520 F.3d 797, 801 (7th Cir. 2008). A paradigmatic example of such a series of violations is workplace sexual harassment, where "[t]he first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable." Id. In contrast, in cases presenting transactions that are "separate, distinct, and could have been challenged by a plaintiff" when they occurred, we have found that the continuing wrong doctrine does not apply. Hope v. Klabal, 457 F.3d 784, 793 (8th Cir. 2006) (finding the doctrine inapplicable under Minnesota law in an action for fraud based on separate sales of multiple paintings spanning the course of many years); Davies v. West Publ'g Co., 622 N.W.2d 836, 841–42 (Minn. Ct. App. 2001) (applying a six-year statute of limitations to breach of fiduciary duty claims based on financial distributions from the same fund occurring over a period beginning in 1967).

9

Blailock v. Hubbs, 2005 WL 1385214, at *2 (Miss. 2005); Wright v. Quesnel, 876 So. 2d 362, 366 (Miss. 2004) ("But to benefit from the discovery rule, a plaintiff must be reasonably diligent in investigating her injuries."); Punzo v. Jackson County, 861 So. 2d 340, 349 (Miss. 2003) ("To claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."). Elaborating on this requirement of reasonable diligence, the Fifth Circuit in First Trust National Association v. First National Bank of Commerce, stated:

> The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice-or should be-that he should carefully investigate the materials that suggest that a cause probably or potentially exists. Neither need the plaintiff know with precision each detail of breach, causation, and damages, but merely enough to make a plain statement of the case backed by evidence sufficient to survive a summary judgment motion.
>
> The [Mississippi Supreme Court] [has] explained that
>
> The plaintiffs need not have actual knowledge of the facts before the duty of due diligence arises; rather, knowledge of certain facts which are "calculated to excite inquiry" give rise to the duty to inquire. The statute of limitations begins to run once plaintiffs are on inquiry that a potential claim exists.

220 F.3d 331, 337 (5th Cir.2000) (citing Smith v. Sanders, 485 So. 2d 1051, 1052 (Miss. 1986)). Here, as discussed under Plaintiffs' fraudulent concealment claim, Plaintiffs cannot show – nor do they even articulate – that they exercised reasonable diligence to discover the claim occurring in 2005. Accordingly, the statute of limitations is not tolled due to the "discovery rule."

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment [125] insofar as it relates to Defendant's alleged breach of fiduciary duty for the 2005 indemnification of the Cheryl Sundbeck lawsuit, as such a claim is barred by the statute of limitations. The Court denies Plaintiffs' Motions for Summary Judgment [128, 172] as it relates to the same claim.

So ORDERED on this, the 20th day of October, 2011

                                                      **/s/ Sharion Aycock**
                                                    **UNITED STATES DISTRICT JUDGE**